IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MELVIN ANTONI FORD, <br><br> Plaintiff, <br><br> v. <br><br> ELIGIO RIVAS, et. al., <br><br> Defendants. | Case No. 3:18-cv-50277 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Melvin Ford, a former pretrial detainee at the Winnebago County Jail, brings this action against Correctional Officer Eligio Rivas; Winnebago County Sheriff Gary Caruana; and the Winnebago County Jail Superintendent Robert Redmond, alleging claims under 42 U.S.C. § 1983 for violations of his constitutional rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Ford also brings state law claims for violations of 725 ILCS 5/103-2(c), 725 LCS 5/103-7, intentional infliction of emotional distress, and negligent supervision and training. FAC, Dkt. 7. Before the Court is the Defendants' motion for summary judgment [149]. For the following reasons, the motion is granted.

I. BACKGROUND[1]

From March 2017 to June 2018, Melvin Ford was a pretrial detainee at the Winnebago County Jail in Rockford, Illinois. D SOF ¶ 7, Dkt. 150. Effective February 28, 2014, the jail adopted the standards set forth in the Prison Rape Elimination Act (PREA) which stated the jail had a "zero-tolerance policy towards all forms of sexual abuse or assault, sexual harassment, or any type of sexual misconduct of detainees/inmates, either by staff or other detainees/inmates." Dkt. 150, Exh. A. Inmates of the jail could access the PREA policy from a kiosk, and the policy allowed inmates to make a PREA complaint to any employee, contractor, or volunteer. D SOF ¶ 28. The kiosk also provided inmates with the numbers for Rockford Sexual Assault Counseling and the PREA hotline, to make complaints about sexual assault. D SOF ¶ 29. When Ford was detained, the jail was preparing for an external audit of its compliance with PREA standards. D SOF ¶ 66. From January 2016 to August 2017, the jail had a full time PREA coordinator who was responsible for meeting PREA standards, going through the audit process, and working with the Sheriff and Superintendent to investigate PREA reports. P SOF ¶ 98, Dkt. 161, P Ex. O, Ditzler Dep. 11:6–16.

On July 25, 2017, Ford contacted Chaplain Dave Thurman to report that earlier that month, Eligio Rivas, a correctional officer at the jail, was sexually harassing him. D SOF ¶10. That same day, Chaplain Thurman sent an email to

---

[1] The following facts are taken from the statement of undisputed facts filed by both sides as part of the summary judgment motion briefing, and to some extent, form the depositions directly.

2

Lieutenant Lukowski about Ford's grievance against Officer Rivas. D SOF ¶ 11. Lt. Lukowski immediately investigated the grievance and spoke to Ford. D SOF ¶ 12. Ford could not provide Lt. Lukowski with exact times, dates, or locations of the sexual harassment but testified that Rivas made sexually suggestive comments two or three times a week, and that he repeatedly asked Rivas to stop. D SOF ¶¶ 9, 12. Two days later Sargent Dan Boyd began an additional investigation into Ford's complaint and separately interviewed Officer Rivas and Ford. D SOF ¶ 14. Sgt. Boyd's investigation and subsequent report concluded that Ford's allegations against Rivas were unfounded. D SOF ¶ 15. According to Officer Rivas, he never made any comments that could be interpreted as sexual harassment. D. Ex. L, Rivas Dep. 40–41.

Four days after Ford's complaint, he was moved to a different pod away from Officer Rivas. D SOF ¶ 16. After his complaint, Ford does not allege that he experienced any additional harassment. D SOF ¶ 39. On multiple occasions between October 2017 and June 2018, Ford spoke to a mental health professional from Rockford Sexual Assault Counseling about his complaint against Officer Rivas. D SOF ¶¶ 42, 60.

## II. LEGAL STANDARD

A successful motion for summary judgment demonstrates that there is no genuine dispute of material fact and judgment is proper as a matter of law. A party opposing summary judgment must proffer specific evidence to show a genuine dispute of fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,

3

323 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Berdsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non–movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non–movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the existence of just any disputed facts will not defeat an otherwise proper motion for summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Rather, the disputed facts must be both "genuine" and "material." *Id*. A fact is material if it might affect the outcome of the suit under governing law. *Id*. Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

A party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference." *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). The court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). But the evidence relied upon to defeat summary judgment must be admissible at trial. *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir.

1996) ("[A] party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."); FED. R. CIV. P. 56 (c)(2). And mere speculation or conjecture will not defeat a summary judgment motion. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016). If the nonmoving party fails to establish the existence of an element essential to his case, summary judgment must be granted for the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996); *Brazkinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993) (the moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof.")

### III. ANALYSIS

Ford brings claims under § 1983 against Officer Eligio Rivas in his individual capacity, Gary Caruana in his official capacity as Winnebago County Sheriff, and Robert Redmond in his individual and official capacity as Superintendent of the Winnebago County Jail. Ford alleges that the Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights because they were deliberately indifferent to his claims of sexual harassment and the harassment's effects on his mental health. P. Resp. Dkt. 155. The Defendants seek summary judgment, arguing that the alleged sexual harassment does not rise to the level of deliberate indifference to an excessive risk to Ford's health or safety. Mot. Sum. Judg., Dkt. 151 at 4. Ford also seeks to impose *Monell* liability against Caruana and Redmond for the jail's failed implementation of the PREA. Caruana and Redmond argue they are entitled to

summary judgment because the evidence shows there were sufficient policies in place and that no policy or procedure resulted in Officer Rivas' alleged harassment. Mot. Sum. Judg., at 9–10.

Additionally, Ford brings state law claims against Caruana and Redmond under 725 ILCS 5/103-2(c) that requires persons in custody be treated humanely, a violation of 725 LCS 5/103-7 which requires posting signage in jails about prisoner's rights and claims for negligent supervision and training. Ford also seeks to impose liability against Officer Rivas for intentional infliction of emotional distress under Illinois law.[2]

a. **Deliberate Indifference**

Ford alleges that his constitutional rights were violated when Officer Rivas sexually harassed him while he was a pretrial detainee at the jail. The Defendants argue that Officer Rivas' alleged conduct does not rise to the level of deliberate indifference to an excessive risk to Ford's health or safety, and Ford does not present any evidence that he suffered from severe harm to his mental health.

Because Ford was a pretrial detainee, his claims arise under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition of cruel and unusual punishment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). Claims under the Due Process Clause are governed by an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cr. 2019). To prevail, the inmate must show that he suffered an objectively serious harm, that the prison official acted

---

[2] Winnebago County was originally a named defendant in this suit until Ford voluntarily dismissed all claims against it from this action [146].

6

purposefully, knowingly, or perhaps even recklessly to an excessive risk to the inmate's health or safety—and that the defendant's actions were objectively unreasonable. *Pittman v. Cty. of Madison*, 970 F.3d 823, 827 (7th Cir. 2020). Negligence or even grossly negligent behavior is not enough. *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018). Verbal harassment can only be actionable if it increases the risk of physical harm or causes severe psychological harm. *See Beal v. Foster*, 803 F.3d 356, 357–59 (7th Cir. 2015).

Ford fails to provide any evidence that any harm he may have suffered was severe enough to be actionable. Ford cites *Lisle v. Welborn*, to support the claim that Rivas' verbal harassment was sufficiently severe to give rise to a constitutional violation. 933 F.3d 705, 718 (7th Cir. 2019). But in *Lisle*, the 7th Circuit reversed the award of summary judgment in favor of the defendant correctional officer because the officer's verbal harassment was based upon an inmate's *known* psychological vulnerability. *Id.* at 719. Still, Ford argues that his case is similar to *Lisle* because prior experiences with sexual assault caused him to have a mental vulnerability and Rivas' comments caused him to recall and suffer these past traumas. P. Opp. to Sum. Judg., Dkt. 156 at 6. But Ford does not provide any evidence that he actually suffered from a severe harm to his mental health because of Officer Rivas' actions. The sole other witness that can provide evidence on his mental health was his sexual assault counselor, Shelia Rodriguez, who testified that Ford did not complain or display of any physical manifestations or symptoms during their meetings. Dkt. 150-1 at 256, Rodriguez Dep. 14:17–21. Further, the record

7

does not sufficiently show that Ford found the harassment to be severe because he did not seek out counseling until three months after the alleged harassment occurred, could not provide specific times or locations where the harassment occurred, and did not complain about further harassment after filing his complaint about Rivas. Even drawing all reasonable inferences in favor of Ford, there is insufficient evidence to find under these facts that Ford suffered serious psychological harm. A reasonable fact finder would not be able to characterize any harm that Ford suffered from as "severe psychological harm," which is required for a constitutional violation from verbal harassment. *See Beal*, 803 F.3d at 357–59; *Lisle*, 833 F.3d at 705 (summary judgment denied where a nurse assigned to a prisoner on suicide watch allegedly taunted and encouraged the prisoner to take his own life); *Robinson v. Buddle*, No. 18-cv-6998, 2021 U.S. Dist. LEXIS 83221 (N.D. Ill. April 30, 2021) (granting summary judgment to defendant officer where the plaintiff alleged an officer verbally sexually harassed him but there was no evidence the plaintiff sought psychological care, he did not fear a physical attack, and there were no repeated incidents of abuse); *Elkins v. Quinn*, No. 19-cv-55-MAB, 2022 U.S. Dist. LEXIS 36074, at * 15–16 (Mar. 1, 2022) (collecting cases).

     An additional reason supports Officer Rivas' motion. Ford must also show that Officer Rivas' actually knew about Ford's preexisting psychological trauma to prove his claim. *Pittman*, 970 F.3d at 827. The record provides no evidence that shows Rivas had knowledge or the intent harm Ford's mental vulnerability. Officer Rivas was at most negligent to the potential that Ford had past trauma with sexual

8

assault, but negligence is not enough for a constitutional violation. *Borello*, 446 F.3d at 747. Ford also does not provide any admissible evidence to create a genuine dispute of material fact that Officer Rivas knew of Ford's past trauma. *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2021) (explaining that the non-movant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial" to defeat summary judgment.). No such evidence exists in the record. There are no witnesses, affidavits, sworn testimony, or investigative reports that support Ford's speculation. In fact, the witness inmate who was interviewed about Rivas' conduct unequivocally denied that Officer Rivas made any sexual advances or comments. Dkt 158, P. Ex. BB. The only evidence Ford points to is an email from Chaplain Thurman about other complaints against Officer Rivas, but the content of the email is inadmissible hearsay that may not be relied upon to defeat summary judgment. *See Bombard*, 92 F.3d at 562; FED. R. CIV. P. 56 (c)(2). Summary judgment is the "put up or shut up moment in a lawsuit" and Ford has not identified specific, admissible evidence to show that there is a genuine dispute of material fact for trial. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

Although Officer Rivas' alleged conduct may constitute verbal harassment, it does not come close to the type of serious harassment that is actionable in a § 1983 claim. Officer Rivas' motion for summary judgment is granted on the deliberate indifference claim because Ford has failed to provide any evidence that Rivas had knowledge of Ford's prior history with sexual assault, any corroborating evidence of

9

his allegations, or sufficient evidence that he suffered severe psychological harm because of Officer Rivas' comments.

**b. *Monell* Claim**

Ford brings an official capacity suit against Superintendent Redmond and Sheriff Caruana alleging that they were deliberately indifferent to a serious risk to his mental health, and as jail administrators they failed to adequately implement PREA standards to address sexual harassment claims. Redmond and Caruana argue that the *Monell* claim fails as a matter of law because they had no knowledge about Ford's sexual harassment claims, no policy, custom, or practice existed that was the moving force behind Ford's alleged constitutional deprivation, and Ford did not suffer a constitutional deprivation.

An official capacity suit against an employee or agent of a government entity is effectively a suit against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007). To prevail, the plaintiff must show that "he was deprived of a federal right." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Under *Monell*, a municipality can only be liable under § 1983 for injuries caused by its own customs, policies, or practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A *Monell* claim cannot be based on respondeat superior. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). "An official capacity claim requires the plaintiff to show that the municipal action was taken with deliberate indifference as to its known or obvious consequences . . . a prison official cannot be

10

found liable unless the official knows of and disregards an excessive risk to inmate health or safety." *Guzman*, 495 F.3d at 859.

There are three types of municipal action that can support municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). As an Illinois sheriff, Caruana has final policymaking authority over jail operations. *Miranda*, 900 F.3d at 344. If the plaintiff alleges that a policy or custom deprived him of a constitutional right, he must show that the policy or custom demonstrates deliberate indifference. *Id.* The municipal action must also be the moving force behind the federal-rights violation. *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 987 (7th Cir. 2021). This is a rigorous causation standard that requires a direct causal link between the challenged municipal action and the constitutional rights violation. *Bohanon*, 46 F.4th at 675.

Ford has provided no evidence that would allow a trier of fact to conclude that some feature in the jail's PREA policy caused him severe mental harm. Ford asserts that there is an issue of fact as to what information was provided to inmates about reporting sexual misconduct. P. Opp. at 10. Yet, Ford initially brought his sexual harassment claim to Chaplain Thurman, and according to the jail's PREA

11

coordinator and Superintendent Redmond, reporting a PREA incident to the jail's chaplain was a valid method to make a complaint under the jail's existing PREA policy. Therefore, Ford clearly had enough information about the PREA policy to know that reporting his complaint to Chaplain Thurman was a proper pathway to report sexual misconduct. Moreover, violating a PREA policy does not equate to violating the Constitution. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

Ford also contends that there is a genuine issue of material fact that Defendants implemented policies "but did nothing to actually enact them in practice." P. Opp. at 7. But a reasonable trier of fact could not find that the sequence of events that followed Ford's complaint demonstrates an inadequate policy or investigation. Ford's claim was immediately investigated by Lt. Lukowski, and an additional investigation took place by Sgt. Lukowski. After Ford complained to Chaplain Thurman about Officer Rivas' alleged verbal harassment there were no further incidents, and days later Ford was moved to a different pod—away from Officer Rivas. This series of events does not demonstrate a widespread failure to communicate the PREA reporting policy to inmates, nor does it demonstrate that the jail was indifferent to Ford's complaint. Ford also does not provide any evidence that there was widespread custom or policy of not investigating PREA complaints, which is necessary to hold a municipality liable for the conduct of its employees. *Monell¸* 436 U.S. 658. Additionally, the record does not contain any corroborating evidence that a policy, practice, or custom harmed another inmate, so *Monell*

12

liability cannot be apply. *Stockon v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022); Estate *of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) (a plaintiff may not simply rely upon his own experience to invoke *Monell* liability); *Grieveson v. Anderson*, 538 F.3d 762, 774 (7th Cir. 2008) (a plaintiff must show that there is a "true municipal policy at issue, not a random event.")

Deliberate indifference may also be found when an official "facilitates, approves, condones, or turns a blind eye" to unconstitutional conduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). But Ford provides no evidence that Redmond or Caruana had any knowledge about a risk to Ford's mental health or the alleged sexual harassment. In Ford's deposition, he testified that he could not remember if he spoke to Redmond or Caruana about his sexual harassment allegations or a lack of adequate reporting options. D. SOF ¶ 33; Ford. Dep. 17-21. And Ford does not allege any personal contact with Redmond. D. SOF ¶ 24. Without evidence of actual awareness, Redmond and Caruana cannot have acted with deliberate indifference. *Guzman*, 495 F.3d at 860 ("[D]eliberate indifference requires evidence that an official *actually* knew of a substantial risk of serious harm and consciously disregarded it nonetheless.")

In the absence of evidence to support Ford's claims, a reasonable trier of fact could not conclude that the jail had a widespread policy or practice that caused Ford severe mental harm or that Redmond and Caruana were deliberately indifferent to a risk of severe mental harm. Because Ford failed to provide any evidence that he suffered a constitutional deprivation, Defendants' motion for summary judgment on

13

the *Monell* claim is granted. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a municipality cannot be liable under *Monell* when there is no constitutional violation by a municipal employee).

### c. Individual Capacity Claim

Ford also sues Superintendent Redmond in his individual capacity. Redmond argues that he is entitled to summary judgment because he had no personal involvement in the alleged constitutional deprivation and Ford has not provided any evidence to show otherwise. Redmond further argues there is no *respondeat superior* liability for section 1983 actions, so Ford may only hold him liable for his own misconduct. *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022). Indeed, for a supervisor to be personally liable, he must have acted knowingly, purposefully, or recklessly, and not merely negligently. *Id.* "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781. However, Ford fails to respond to Redmond's argument against personal liability and therefore forfeits his individual capacity claim against Redmond. *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (holding that a plaintiff's failure to respond to an argument results in forfeiture).

### d. Fifth Amendment

In Ford's amended complaint, he alleges that the defendants violated his Fifth Amendment due process rights. The Defendants argue that they are entitled

to summary judgment because Ford has not provided any evidentiary support for the claim. The record is devoid of any evidentiary support for a Fifth Amendment claim and Ford also fails to respond to the Defendants arguments on this point. Because Ford once again failed to respond, he forfeits his Fifth Amendment claim. *Foxx*, 815 F.3d at 1078 (holding that a plaintiff's failure to respond to an argument results in forfeiture). Moreover, the Fifth Amendment does not apply to local law enforcement under these circumstances. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

e. **State law Claims**

Invoking the Court's supplemental jurisdiction under 28 U.S.C § 1367, Ford brings state law claims against Redmond and Caruana for violations of 725 ILCS 5/103-2(c) and 725 LCS 5/103-7, and claims for negligent supervision and training. Ford also seeks to impose liability against Officer Rivas for intentional infliction of emotional distress under Illinois law.[3] Because the Court has resolved all federal claims, the Court, using its discretion, declines to exercise supplement jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3); *Lavite v. Dunstan,* 932 F.3d 1020, 1034 (7th Cir. 2019) ("The district court was well within its discretion in declining to exercise supplemental jurisdiction after it dismissed all claims over which it had original jurisdiction.").

---

[3] Winnebago County was originally a named defendant in this suit until Ford voluntarily dismissed all claims against it from this action [146].

## IV. CONCLUSION

For the above reasons, the Defendants' motion for summary judgment is granted. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and are dismissed without prejudice to being refiled in state court. All claims are now resolved against all parties.

*** 

The Court thanks assigned counsel for their work on this matter.

Date: April 12, 2023

_____
Honorable Iain D. Johnston
United States District Judge